UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KNIGHTSBRIDGE MANAGEMENT, INC. T/A KNIGHTSBRIDGE RESTAURANT GROUP; ARDEO, LLC T/A SABABA/BINDAAS; BOMBAY CLUB, INC.; OVAL ROOM, LLC; RASIKA, LLC, BIBIANA, LLC T/A MODENA; RASIKA WEST END, LLC; AB, LLC T/A OLIVIA; BINDAAS 2000 PENN LLC T/A BINDAAS; and ANNABELLE, LLC, | ) ) ) ) ) ) ) ) ) ) ) | Case No. 3:20-cv-01165-GCS |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

### I.   INTRODUCTION AND BACKGROUND

Pending before the Court is Plaintiffs' motion to remand (Doc. 17) and Defendant's

motion to transfer venue to the United States District Court for the District of Columbia

(Doc. 7). Based on the reasons delineated below, the Court denies the motion to remand

and grants the motion to transfer venue.

Plaintiffs originally filed their three-count complaint on October 26, 2020 in the

Circuit Court of St. Clair County, Illinois, for declaratory judgment against Defendant Zurich American Insurance Company based on state insurance contract law (Count I); breach of contract (Count II); and breach of the implied covenant of good faith and fair dealing. (Doc. 1-1). According to the complaint, Plaintiffs operate ten restaurants in the Washington, D.C. area that were forced to either close or curtail their operations due to public health orders issued during the COVID-19 pandemic. Defendant provided a comprehensive business insurance policy ("Policy") to Plaintiffs that protects business income losses. Plaintiffs allege that they have paid all premiums on the Policy and met all other necessary conditions to keep the Policy in force. Plaintiffs further allege that Defendant refused to provide any coverage. As a result of the public health orders and Defendant's alleged conduct, Plaintiffs maintain that their restaurants have lost significant income – including closure – and have been forced to furlough many of its employees. Plaintiffs' complaint seeks declaratory judgment and coverage for business operations and losses under a policy with limits of $7,600,000.

On November 3, 2020, Defendant removed the case to this judicial district pursuant to 28 U.S.C. §§ 1441 and 1446 on diversity jurisdiction grounds. (Doc. 1). On November 4, 2020, the Clerk of the St. Clair County Circuit Court issued the summons to Defendant, and on November 6, 2020, Plaintiffs effected service on Defendant.

The current dispute centers on the question of whether Defendant's removal was proper. Defendant removed this case almost immediately after it was filed, before Plaintiff served Defendant and despite the fact that Defendant is a citizen of Illinois.

Though Defendant notes 28 U.S.C. § 1441(b)'s language that removal is improper in diversity cases if a "joined and served" defendant "is a citizen of the State in which such action is brought," it argues that since it was not joined and served at the time of removal, its removal was proper. Plaintiffs disagree. Plaintiffs argue that the removal was improper because a case may not be removed where a resident defendant is a party --- served or unserved and that Plaintiffs could not have served Defendant until the state court issued the summons. The Court will address the remand motion first as the Court must ascertain whether it has subject matter jurisdiction to hear Plaintiffs' claims.

## II.   ANALYSIS

### A.   Plaintiff's Motion to Remand

As the party invoking the jurisdiction of this Court, Defendant bears the burden of establishing federal jurisdiction. *See Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 352-353 (7th Cir. 2017). Federal courts are courts of limited jurisdiction and may only exercise jurisdiction where specifically authorized by federal statute. *See Evers v. Astrue*, 536 F.3d 651, 657 (7th Cir. 2008). Under 28 U.S.C. § 1332(a), "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of a State and citizens or subjects of a foreign state . . . ." 28 U.S.C. § 1332(a). In this case, there is no dispute over complete diversity and the amount in controversy. Plaintiffs are citizens of the District of Columbia, Delaware and Maryland. Defendant is a citizen of New York

and Illinois. Plaintiffs' complaint seeks coverage for business operations and losses under a policy with limits of $7,600,000. Diversity jurisdiction is thus proper.

Removal is governed by 28 U.S.C § 1441. Removal is proper if the case could have been originally brought in federal court. *See Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n*, 707 F.3d 883, 890 (7th Cir. 2013). When removal jurisdiction is challenged, a court's jurisdiction is measured at the time of removal, and it is not affected by subsequent events. *See In re Shell Oil*, 966 F.2d 1130, 1133 (7th Cir. 1992)(citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938)). "[F]ederal courts should interpret the removal statute narrowly, resolving any doubt in favor of plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009).

Even where diversity jurisdiction applies, the removing party "must clear the additional hurdle of . . . the forum defendant rule." *Morris v. Nuzzo*, 718 F.3d 660, 665 (7th Cir. 2013). The forum defendant rule limits the removability of diversity cases when a defendant is a citizen of the forum:

> A civil action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest ***properly joined and served*** as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441(b)(2) (emphasis added). The purpose of diversity jurisdiction is to provide out-of-state litigants with access to a federal court for fear that such litigants "might otherwise suffer from local prejudice." *Hertz Corp. v. Friend*, 559 U.S. 77, 85 (2010). But, where a defendant is sued in its home state, the local prejudice element is absent,

and thus such a defendant should not be able to remove the case to federal court. This is one of the rationales underlying the forum defendant rule.

Here, Plaintiffs argue that the forum defendant rule bars removal based on diversity jurisdiction.[1] Specifically, Plaintiffs argue that this diversity case cannot be removed because the Defendant is a citizen of Illinois. Illinois is the forum state and thus as the forum defendant, Defendant should be barred from removing this case to federal court. Defendant counters that because it was not served at the time it removed the case, the forum defendant rule is inapplicable. Defendant had not yet been served at the time Defendant removed the case on November 3, 2020. In fact, Defendant was properly joined and served on November 6, 2020. Plaintiffs contend that Defendant's interpretation of the forum defendant rule perverts the clear purpose of the removal statute, violates the spirit of the law, and results in absurdity.

The Seventh Circuit has not decided this issue, likely because "failure to comply with the forum defendant rule is [] a defect in the removal process that bars [appellate] review." *Holmstrom v. Peterson*, 492 F.3d 833, 838 (7th Cir. 2007). District Courts in this circuit are split as to whether the forum defendant rule bars pre-service removal to federal court based on diversity jurisdiction. *See Graff v. Leslie Hindman Auctioneers, Inc.*, 299 F. Supp. 3d 928, 934 (N.D. Ill. 2017). Some courts, relying on the Congressional intent behind

---

[1]      The Court need not address Plaintiffs' additional argument that the case cannot be removed under federal question jurisdiction as it is clear the Defendant removed the case only on the basis of diversity jurisdiction.

the forum defendant rule, do not allow pre-service removal where there is a resident defendant. *See, e.g., Snider v. Chrysler Grp., LLC*, No. 14 C 50173, 2015 WL 12834237, *3 (N.D. Ill. Jan. 15, 2015); *Estep v. Pharmacia & Upjohn Co., Inc.*, 67 F. Supp. 3d 952, 960 (N.D. Ill. 2014); *Vivas v. Boeing Co.*, 486 F. Supp. 2d 726, 734 (N.D. Ill. 2007); *Holmstrom v. Harad*, No. 05 C 2714, 2005 WL 1950672, at 82 (N.D. Ill. Aug. 11, 2005).

Most courts, however, have relied on the plain meaning of the forum defendant rule and concluded that removal is permitted if it occurs before service of an in-forum defendant is effectuated. *See, e.g., Service Corp. Inter. v. Stericycle, Inc.*, No. 20 C 838, 2020 WL 6565253 (N.D. Ill. Nov. 9, 2020); *Cheatham v. Abbott Labs. Inc.*, 323 F. Supp. 3d 991, 995 (N.D. Ill. 2018); *Grandinetti v. Uber Techs., Inc.*, No. 19 C 05731, 2020 WL 4437806, at *7 (N.D. Ill. Aug. 1, 2020); *Graff*, 299 F. Supp. 3d at 937; *Selective Ins. Co. of S.C. v. Target Corp.*, No. 13 C 5910, 2013 WL 12205696, at *1 (N.D. Ill. Dec. 13, 2013); *Maple Leaf Bakery v. Raychem Corp.*, No. 99 C 6948, 1999 WL 1101326, at *2 (N.D. Ill. Nov. 29, 1999). *See also Test Drilling Serv. Co. v. Hanor Co.*, 322 F. Supp. 2d 953, 957 (C.D. Ill. 2003); *In re Bridgestone/Firestone, Inc.*, 184 F. Supp. 2d 826, 828 (S.D. Ind. 2002). Courts in this district have likewise followed this plain language approach. *See, e.g., In re Pradaxa (Dabigatram Etexilate) Prod. Liab. Litig.*, No. 3:12-md-02385-DRH-SCW, 2013 WL 656822, at * 4 (S.D. Ill. Feb. 22, 2013)(stating that "[t]he vast majority of courts considering those statutory requirements have concluded that, where diversity exists, the presence of an unserved forum defendant does not bar removal"); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Relevant Prods. Liab. Litig.*, No. 3:09-md-02100-DRH-PMF, 2010 WL 3937414, at

*11 (S.D. Ill. Oct. 4, 2010); *Sheffer v. Cottrell, Inc.*, No. 3:08-cv-00791-DRH, 2009 WL 1231037, *3 (S.D. Ill. April 30, 2009); *Massey v. Cassens & Sons, Inc.*, No. 3:05–cv-00598–DRH, 2006 WL 381943, at * 2 (S.D. Ill Feb. 16, 2006)(stating that "where complete diversity is present . . . only the presence of a 'joined-and-served' resident defendant defeats removal . . . . The statute contains no proviso, and, given its clarity, it is not the Court's role to insert one.").

In addition to the aforementioned courts, four Circuit Courts of Appeal have concluded that removal is proper prior to a forum defendant having been served. In *Gibbons,* for example, the Second Circuit reasoned that based on the plain language, the forum defendant rule was only applicable if a home-state defendant had been "properly joined and served." *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 707 (2nd Cir. 2019). *See also Encompass Ins. v. Stone Mansion Rest., Inc.*, 902 F.3d 147, 153-154 (3rd Cir. 2018)(concluding that language of forum defendant rule was unambiguous and precludes removal only when the forum defendant has been properly joined and served); *Texas Brine Co., L.L.C. v. Am. Arbitration Ass'n, Inc.*, 955 F.3d 482, 487 (5th Cir. 2020)(noting that presence of unserved forum defendant does not preclude removal); *McCall v. Scott,* 239 F.3d 808, 813 n. 2 (6th Cir. 2001)(stating that "the inclusion of an unserved resident defendant in the action does not defeat removal under 28 U.S.C. § 1441(b).").

The Second Circuit then addressed whether its plain language construction produced an absurd result or was fundamentally unfair, which is similar to the arguments made by Plaintiffs here to defeat removal. In *Gibbons*, Plaintiffs argued that it

was "absurd to allow a home-state defendant to use an exception meant to protect defendants from unfair bias (in the courts of a plaintiff's home state) and language designed to shield them from gamesmanship (in the form of fraudulent joinder) to remove a lawsuit to federal court." *Gibbons*, 919 F.3d at 706. The Second Circuit acknowledged that it was "anomalous to permit a defendant sued in its home state to remove a diversity action," but ultimately concluded that it "'d[id] not contravene' Congress's intent to combat fraudulent joinder." *Id.* In fact, it noted that Congress "may well have adopted the 'properly joined and served' requirement in an attempt to both limit gamesmanship and provide a bright-line ruled keyed on service[.]" *Id. See also Encompass Ins. Co.*, 902 F.3d at 153-154 (noting that it was "peculiar" to permit the defendant "to use pre-service machinations to remove a case that it otherwise could not; however, the outcome is not so outlandish as to constitute an absurd or bizarre result."); *Service Corp. Int'l*, 2020 WL 6565253, at 4 (noting that permitting an unserved forum defendant to avoid the forum defendant rule did undermine plaintiff's choice of forum, but it did not frustrate the purpose of fraudulent joinder nor did it undermine the framework for federal jurisdiction generally).

As to issues of fundamental unfairness, the Plaintiffs in *Gibbons* argued that the court needed "to avoid 'non-uniform application' of the forum defendant rule based on the vagaries of state law service requirements." *Gibbons*, 919 F.3d at 706. This was one of the reasons advanced by the court in *In re: Testosterone Replacement Therapy Prod. Liab. Litig.* to remand the case based on the forum defendant rule. 67 F. Supp. 3d 952, 961 (N.D.

Ill. 2014)(noting that allowing a forum defendant to remove prior to being served would result in the elimination of the forum defendant rule in Illinois because a party could not accomplish instantaneous service of a summons on a defendant). The Second Circuit, however, noted that "state-by-state variation is not uncommon in federal litigation, including in the removal context[.]" *Gibbons*, 919 F.3d at 706. In any event, the existence of disparities and variations did not amount to such fundamental unfairness as to warrant dispensing with the plain language of the statute. *Id.*

Here, the undersigned is persuaded and agrees with the reasoning applied by the four Circuit Courts of Appeal, the majority of district courts in this circuit, as well as courts in this judicial district. While the Court acknowledges the unusual result of having a forum defendant remove a case that it would not otherwise be able to remove, the Court is governed by the plain language of the statute, which is clear and unambiguous. And, enforcing such language as written effectuates Congressional intent "because federal courts must assume 'that the ordinary meaning . . . accurately expresses the legislative purpose.'" *Grandinetti*, 476 F. Supp. 3d at 755. To the extent that permitting an in-forum defendant to remove prior to being served may result in gamesmanship, that flaw is for Congress to fix, not this Court.

Where complete diversity exists, as it does here, only the presence of a "joined-and-served" resident defendant defeats removal under 28 U.S.C. § 1441(b). Defendant was not served prior to Defendant removing this case to this Court. Thus, the Court finds that Defendant's removal prior to service was proper and that the Court has subject

matter jurisdiction over Plaintiffs' claims. Accordingly, the Court denies the motion to remand.

Considering the foregoing, the Court must address the merits of Defendant's motion to transfer venue to the United States District Court for the District of Columbia.

**B.     Defendant's Motion To Transfer Venue**

Changes of venue are governed by Section 1404, which provides in relevant part:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). This section "allow[s] a district court to transfer an action filed in a proper, though not necessarily convenient, venue to a more convenient district." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010). Transfer is proper under Section 1404(a), if "(1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice." *Id*. at 977-978. The decision to transfer is left primarily to the district court's sound discretion. *Id.* Courts are to view these factors "in light of all the circumstances of the case." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). The movant has the burden of showing, "by reference to particular circumstances, that the transferee forum is clearly more convenient." *Id*. at 219-220. Based on the record, the Court finds that Defendant has met its burden regarding transfer and all three factors favor transfer to the District Court for the District of Columbia.

Regarding the first factor, the Court assumes, without deciding, that venue is proper in this judicial district (the transferor court), for purposes of the Section 1404(a) analysis.[2] As for the transferee venue, all Plaintiffs are citizens of the District of Columbia, Delaware and Maryland; Plaintiffs maintain their restaurants in the District of Columbia, and these restaurants are located just a few miles from the District Court for the District of Columbia. In fact, Plaintiffs do not contest/refute that venue is proper in the District of Columbia. Instead, Plaintiffs argue that the Southern District of Illinois is far more convenient for everyone involved. Therefore, the Court concludes that venue is proper in the District of Columbia (the transferee court).

Having determined that venue is proper in the District of Columbia (the transferee court), the Court now turns to the convenience of the parties and the witnesses. "The weighing factors for and against transfer necessarily involve a large degree of subtlety and latitude, and therefore, are committed to the sound discretion of the trial judge." *Coffey*, 796 F.2d at 219. To evaluate convenience, "courts generally consider the availability of and access to the witnesses, and each party's access to and distance from resources in each forum." *Research Automation, Inc.*, 626 F.3d at 978. "Other related factors include the location of the material events[,][] the relative ease of access to sources of proof," *id.*, and the plaintiff's choice of forum. Based on the record and the circumstances of the case, the Court finds that it would serve the convenience of the parties and the

---

[2]       The parties' pleadings demonstrate that the parties agree that venue is proper in the Southern District of Illinois.

witnesses to transfer the case to the District Court for the District of Columbia.

It is true that the plaintiff's choice of forum is typically accorded great weight. *See In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003). That choice, however, is afforded little significance where none of the relevant conduct occurred in the chosen forum. *See Chicago, Rock Island & Pac. R.R. Co v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955). Here, none of the material events or witnesses have any connection to this district.

With respect to the location of material events, Plaintiffs contend that the alleged breach occurred when Zurich denied coverage under the Policy. That decision was made from its headquarters located in Cook County, Illinois. Plaintiffs further contend that the question of coverage, which depends on the drafting and underwriting history of the Policy, also occurred in Cook County, Illinois. While these key events occurred in the State of Illinois, they occurred in the Northern District of Illinois, not this judicial district.

Defendant counters that none of its employees involved in the process of underwriting and drafting the Policy were located in Illinois. The underwriter for the Policy was located in Washington, D.C. The underwriting assistants involved in the process of issuing the Policy were located in Owing Mills, Maryland, which is 53 miles from Washington, D.C. Furthermore, none of the Plaintiffs' restaurants are located in the Southern District of Illinois; rather they are located in the District of Columbia. Also, none of the Plaintiffs are citizens of Illinois, and none of the Plaintiffs reside in the Southern District of Illinois. Instead, they are citizens of the District of Columbia, Delaware and Maryland, all of which are closer to the transferee venue than this district.

As is clear from the above, the location of the material events and the availability of and access to witnesses weigh heavily in favor of transfer to the District of Columbia. The principal events and key witnesses have no appreciable connection to this district. Thus, Plaintiffs' choice of forum in the Southern District of Illinois carries little weight for this Court as a factor in evaluating convenience.

As to relative ease of access to sources of proof, the Court finds that this factor is neutral. As noted by the Seventh Circuit, the ease of access to the sources of proof, easy air transportation, the rapid transmission of documents and the abundance of law firms with nationwide practices, make it easy for cases to be litigated with little extra burden in any of the major metropolitan areas. *See Board of Trustees, Sheet Metal Workers National Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000). Thus, this portion of the analysis neither weighs in favor nor against transfer.

Lastly, the Court must consider the "interest of justice" component of the transfer analysis. "Public interests" include: (1) the speed of the proceeding; (2) the court's familiarity with applicable law; and (3) the relation of the community to the occurrence and the desirability of resolving the controversy in its locale. First, the speed of the proceedings tilts slightly towards the District of Columbia. Based on the most recent statistics for civil cases in the District of Columbia, the median time from filing to disposition was 5.8 months and the median time from filing to trial was 40 months.[3]

---

[3]     The number from filing to trial is from June 2020 as the statistics did not include the September 2020 numbers.

When compared to similar statistics for civil cases in the Southern District of Illinois, the median time from filing to disposition was 13.3 months and the median time from filing to trial was 38.6 months.[4]  As to the court's familiarity with applicable law, this factor is neutral. Plaintiffs' claims arise under state law. However, all federal courts are adept at applying laws foreign to the law of the particular state where the court is located.

The relation of the community to the occurrence and the desirability of resolving the controversy in its locale weighs heavily in favor of the District of Columbia. The impact of the public health orders and the alleged breach of contract have a much closer connection to the District of Columbia rather than this district. All of Plaintiffs' restaurants are located in the District of Columbia, and all of the Plaintiffs either hail from the District of Columbia or are in adjacent or nearby states. The key decision makers for the Defendant are also either in or very close to the District of Columbia. While some important decisions may have been made in Illinois, they were not made in this district, but rather the Northern District of Illinois. Thus, the District of Columbia has an undeniably stronger relationship to the controversy than this district.

The above factor is guided by the legitimate expectations and perceptions of the public. It is more reasonable and logical, and in fact the general expectation and perception would be, that a lawsuit would take place in a district that has a closer

---

[4]      The number from filing to trial is from June 2019 as the statistics did not include the September 2020 numbers.

connection to the key people, places, and events. Indeed, to hold otherwise would raise questions as to why this district was handling a matter where the public health decisions made, the adverse effect of those decisions, and the key events regarding contract formation and performance all occurred outside of this district. The legitimacy of the courts as an institution is founded in part on the public's expectations and perceptions. The questions that could be raised by keeping the lawsuit in this district could detrimentally impact those expectations and perceptions. Therefore, the interest of justice factor squarely favors transfer to the District of Columbia.

For the foregoing reasons, the Court concludes that transferring the action to the District Court for the District of Columbia is appropriate. Venue is proper there, and the convenience and the interest of justice factors weigh in favor of transfer.

## III.   CONCLUSION

Accordingly, the Court **DENIES** the motion to remand (Doc. 17) and **GRANTS** Defendant's motion to transfer venue (Doc. 7). Pursuant to 28 U.S.C. § 1404(a), the Court **TRANSFERS** this case to the United States District Court for the District of Columbia. The Clerk of Court shall close the case in this judicial district.

**IT IS SO ORDERED**.

**DATED:   February 11, 2021.**

Digitally signed
by Judge Sison 2
Date: 2021.02.11
17:50:29 -06'00'

_____

**GILBERT C. SISON**
**United States Magistrate Judge**